Estate of Ben F. Hazelton, Jr., Deceased, Irvin W. Lesher, Executor under the Last Will and Testament v. Commissioner.
Estate of Hazelton v. Commissioner
Docket No. 112055.
United States Tax Court
1943 Tax Ct. Memo LEXIS 197; 2 T.C.M. (CCH) 450; T.C.M. (RIA) 43343; July 14, 1943
*197 Merwyn G. Leatherman, Esq., and Edwin W. Williams, Esq., 1600 Ohio Bldg., Toledo, O., for the petitioner. DeWitt M. Evans, Esq., for the respondent. STERNHAGEN Memorandum Findings of Fact and Opinion The Commissioner determined an estate tax deficiency of $41,395.26. The petitioner assails (1) the inclusion in the gross estate of the assets of a trust and (2) the valuation of a block of shares. Findings of Fact Ben F. Hazelton, Jr., died February 3, 1940. An estate tax return was filed May 2, 1941, in the Tenth District of Ohio, using February 3, 1941, as the optional valuation date. (1) On August 19, 1935, the decedent transferred 1,000 shares of The Berney Corporation to The Toledo Trust Company, Toledo, Ohio, as trustee under a trust agreement of the same date, called No. 1170. The value of the trust property on that date was $98.642.70, and on February 3, 1941, was $120,060.69. The trust agreement provided in Article I for the creation of an Advisory Committee of three individuals, none of whom had any beneficial interest in the trust. The donor was not one of the committee. Article II is in part as follows: Article II Beneficiaries The principal beneficiary of *198 this trust is Ben F. Hazelton, Jr., the donor, and during his lifetime the Trustee shall pay to him, from time to time such part of the annual net income or accumulated net income from the trust property as the Advisory Committee may, in its uncontrolled discretion and at any time or times, deem necessary for his suitable comfort and support and conducive to his general welfare, and shall in writing direct to the Trustee. In case of great emergency, including serious impairment of health, the Trustee shall pay to Donor, from time to time, such part of the principal of the trust property as the Advisory Committee shall, by unanimous vote in its uncontrolled discretion, declare to be necessary for his protection, support, and maintenance, and shall in writing direct to Trustee, but no part of the principal of the trust property shall so be delivered to Donor for investment by Donor or any other person. Upon the death of Donor, the Advisory Committee, at any time and from time to time whenever it shall determine it to be needful or desirable for their comfort, support, or education, or conducive to their general welfare, may direct the payment of any part of said income and/or principal *199 to Ben F. Hazelton, III, Donor's son, and/or any other lineal descendant of Donor * * *. * * * * *
Twenty (20) years after the death of said Ben F. Hazelton, Jr., or Donor's said son, whichever event shall last transpire, the trust property shall be distributed and delivered in equal parts among the children of Donor, whether of the body or adopted. (In the event of the death of any such child before such distribution, the share which would have been distributed to such child shall be distributed to its issue per stirpes). If there be no such lineal descendants of Donor at such time, the trust property shall then be distributed to or among one or more of the nieces and nephews of Donor and their issue in such proportions as the Advisory Committee, in its uncontrolled discretion, shall determine * * *. Under Article V the donor could increase the trust corpus by depositing additional assets with the trustee. In Article VI "The Donor surrenders all right to modify, amend or revoke this trust." After creation of this trust, decedent possessed assets of the market value of about $2,000,000. His annual net income for the years 1935 to 1939, inclusive, was not less than $39,165.77 *200 and averaged $90,671.29. The trustee received, and reported, income of the trust as follows: Capital Gains
Net Income
Included
1935
$ 1,187.50
1936
26,728.63
$23,515.37
1937
4,206.95
208.56
1938
6,316.31
5,100.00
1939
1,599.64
The entire net income from the trust was received by the trustee and no payment of principal or interest was made to the donor and none of the principal or income was used or set aside directly or indirectly for his benefit in any way. This Court on August 26, 1940, in another and separate proceeding, held that the entire value of the trust assets on August 19, 1935. was subject to gift tax, and such tax of $15,591.96 has been paid. (2) In decedent's estate were 18,660 common shares of Owens-Illinois Glass Company, an Ohio corporation engaged in the manufacture of glass and metal containers. In the federal estate tax return, the petitioner included them at a value of $41.25 per share. On February 3, 1941, the fair market value of 18,660 shares of common stock of Owens-Illinois Glass Company was $802,380, or $43 per share. Opinion STERNHAGEN, Judge: 1. The taxpayer challenges the inclusion in the gross estate of the value, on *201 the optional valuation date, of the property in the trust estate (No. 1170). The Commissioner's valuation of $120,060.69 is not assailed, and that value is found as a fact. The notice of deficiency explains the inclusion as follows: The value of the corpus of Trust No. 1170, Ben F. Hazelton, Jr., is included in the gross estate under Section 811(c) of the Internal Revenue Code, as a transfer in trust whereby the decedent retained for his life, (1) the right to the income from the trust property (2) the right to the return of the corpus of the trust. In his brief, the respondent also supports the inclusion on the ground that the transfer in trust was one intended to take effect in possession or enjoyment at or after the decedent's death; which is also a ground under Section 811 (c). The petitioner complains of respondent's raising this as a new issue beyond the pleadings. Petitioner does not suggest that the record is not sufficient for presentation and consideration of the question, and it is hard to see in what respect the record could be made more complete for the purpose. However, in his reply brief the petitioner argues the question on its merits, and since it is within the *202 very section upon which the determination rests, we cannot avoid its consideration. It seems clear that the trust, made in 1935, was a transfer intended to take effect in possession or enjoyment after the donor's death. When it was made, no one else was given any present right to possession or enjoyment of the transferred property or the income therefrom. Not until the decedent's death, did the son have even the contingent possibility of receiving corpus or income should the advisory committee in its uncontrolled discretion think the circumstances such as to justify or require it. True the legal title to the property was transferred to the trustee in 1935, where it remained thereafter, but the possession and enjoyment were not transferred by the donor to another at that time and were not to be in another until after his death. Indeed it may be said that not until his death was the possibility terminated that some or all of the corpus or income might be used for his need or comfort; until then possession or enjoyment by another was not assured. We are of opinion that the transfer in trust was a transfer intended to take effect in possession or enjoyment at or after death, and is therefore *203 required to be included in the decedent's gross estate to the extent of its value of $120,060.69. Since the inclusion is correct on this ground, it is not necessary to consider whether the ground stated by the Commissioner in the deficiency notice is at variance with an earlier decision of this Court (then Board) sustaining a gift tax upon the transfer when it was made in 1935. As both parties well understand, the gift tax so imposed becomes a credit upon the estate tax now sustained, and there is no duplication. Internal Revenue Code, Section 813 (a) (2). The petitioner, having returned the 18,660 common shares of Owens-Illinois Glass Company at a per share value of $41.25, assails the Commissioner's determination that the per share value on the selected optional date, February 3, 1941, was $44,625, and resists the respondent's attempt now to have the value found to be $46.25. We have considered all the evidence in the record, both by way of stipulation and testimony, and upon the entire evidence have found as a fact that the fair market value on the optional date was $43 a share, or $802,380. Decision will be entered under Rule 50.